1
2
3
4
5
6
7
8
9            UNITED STATES DISTRICT COURT

10           EASTERN DISTRICT OF CALIFORNIA

11

12                   ----oo0oo----

13

14  STEVEN EDWARD CRITTENDEN,
                                NO. CIV. S-95-1957 FCD/GGH
15          Petitioner,         NO. CIV. S-97-0602 FCD/GGH

16      v.                      DEATH PENALTY CASE

17  ARTHUR CALDERON,            MEMORANDUM AND ORDER

18          Respondent.

19

20                   ----oo0oo----

21      This matter is before the court on petitioner Steven Edward

22  Crittenden's motion to amend the judgment entered February 23,

23  2005 pursuant to the court's order of that same day, adopting the

24  magistrate judge's findings and recommendations and finally

25  denying petitioner's habeas petition in its entirety.  Fed. R.

26  Civ. P. 59(e).  While petitioner's habeas petition asserted

27  numerous claims, he moves herein for relief only with respect to

28  one claim--that he was shackled in violation of his due process

rights during both the guilt and penalty phases of his trial. Specifically, with respect to the court's order of February 23, 2005, petitioner argues that the court committed "clear error" in finding that he was not prejudiced during either phase by his shackling.

During the pendency of the instant motion, the United States Supreme Court issued its decision in <u>Deck v. Missouri</u>,No. 04-5293, 2005 WL 1200394 (May 23, 2005).  It is petitioner's position that <u>Deck</u> supports his motion and requires this court to reconsider its lack of prejudice finding and to find, instead, that petitioner was prejudiced by his shackling, at a minimum, during the penalty phase.  Respondent, on the other hand, argues that the court need not reach the prejudice issue because <u>Deck</u> requires that the court reconsider its *initial* decision in May 2002 that petitioner's shackling was constitutionally in error. (Memorandum and Order, filed May 13, 2002,("May 13 M&O")  at 37:23-24 [finding that petitioner's shackling with a waist chain was constitutional error because the trial court failed "to at least *consider* alternatives to physical restraints"]) (emphasis in original).

For the reasons set forth below, the court agrees with respondent.  <u>Deck</u> mandates that this court reconsider its initial decision finding that the state court's failure to consider alternatives to physical restraints resulted in constitutional error.  Because the court finds that <u>Deck</u> teaches that the law with respect to shackling, in particular, the requirement of
/////
/////

2

1   consideration of alternatives to shackling, was not "clearly
2   established," it reverses its finding of constitutional error.[1]

3   **BACKGROUND**

4   In its May 13, 2002 M&O, the court found, contrary to the
5   magistrate judge's findings and recommendations, that the state
6   court erred in failing to consider alternatives to physical
7   restraints.  In reaching this finding, the court applied
8   controlling Ninth Circuit authority because, at the time, it
9   construed the case as arising pre-AEDPA. (May 13 M&O at 9-13.)
10  Thus, the court found that the Ninth Circuit required that the
11  trial court "'be persuaded by compelling circumstances that some
12  measures were needed to maintain security'" *and* "'[t]hen . . .
13  pursue less restrictive alternatives before [imposing] physical
14  restraints.'"  (May 13 M&O at 36:1-4 [quoting Castillo v.
15  Stainer, 983 F.2d 145, 147 (9th Cir. 1992)].)  Under Castillo,
16  "constitutional error is committed by a state court that shackles
17  without [considering the criteria set out by the court]."
18  Castillo, 983 F.2d at 148 (finding error because the trial court
19  did not consider "the various burdens imposed by shackling, and
20  did not weigh these burdens against other possible alternatives"
21  and "[t]he waist chain was not the court's last resort").

22  Having found constitutional error, the court directed the
23  magistrate judge to conduct an evidentiary hearing to determine
24  whether the error was prejudicial.  Rhoden v. Rowland (Rhoden I),
25  10 F.3d 1457, 1459 (9th Cir. 1993) ("A claim of unconstitutional
26  shackling is subject to harmless error analysis.")  The

27  ─────────────────
28      [1]   In light of this holding the court need not reach the
    issue of prejudice.

3

1  magistrate judge conducted the hearing on this issue, among
2  others, December 12 and 13, 2002, and subsequently filed further
3  findings and recommendations on February 27, 2003 ("F&R").  In
4  that F&R, the magistrate judge recommended that the court deny
5  petitioner's shackling claim on the ground that, despite credible
6  evidence that eight testifying jurors saw or otherwise knew
7  Petitioner was shackled, and that his shackling was discussed by
8  the jurors briefly during a recess in the guilt phase and during
9  deliberations in the penalty phase, petitioner was not
10 prejudiced, in light of the type and strength of case presented
11 against him and the fact that the shackles were unobtrusive and
12 not blatantly obvious. (F&R at 45-49.)

13     However, prior to reaching this decision, the magistrate
14 judge asked that the court reconsider its prior finding that the
15 trial court committed error in failing to consider less
16 restrictive alternatives to shackles.  Specifically, the
17 magistrate judge asked that the court consider "whether the fact
18 of minimal shackling itself is a 'less restrictive alternative'
19 when compared to openly visible shackling, hands and feet."  (F&R
20 at 40:16-18.)  The magistrate judge maintained that under Ninth
21 Circuit authority, *less* extensive shackling can be considered an
22 alternative to extensive shackling.  (F&R at 40-42.)

23     In its order of February 23, 2005 ("Feb. 23 M&O"), the court
24 declined to reconsider its prior finding, but ultimately adopted
25 the magistrate judge's recommendation on the prejudice issue,
26 thereby denying petitioner's habeas petition on this claim.
27 (Feb. 23 M&O at 33-47.)  In reaching these conclusions, the court
28 /////

considered the issues under a different standard of review than
the magistrate judge.

     *After* the filing of the F&R, the United States Supreme Court
issued its decision in <u>Woodford v. Garceau</u>, 538 U.S. 202 (2003),
which both parties agreed required application of the AEDPA to
this case.  (Feb. 23 M&O at 4:26-5:2 [quoting <u>Woodford</u> which
overruled contrary Ninth Circuit authority and found that the
AEDPA's provisions apply to habeas petitions, like petitioner's,
that were filed after the AEDPA's effective date, even if a
request for counsel was filed prior to the statute's enactment].)
Under the AEDPA, a federal court may grant an application for
writ of habeas corpus only if the claim "(1) resulted in a
decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States, or (2) resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the state court
proceeding."  28 U.S.C. § 2254(d).  While Ninth Circuit authority
may be used as persuasive authority, Supreme Court precedent is
the only "clearly established Federal law" that is controlling.
<u>Luna v. Cambra</u>, 306 F.3d 954, 960 (9th Cir. 2002).

     Significant to the pending motion, after applying this
standard, the court declined to reconsider its prior decision
finding constitutional error in the shackling of petitioner.  In
doing so, the court acknowledged that the Supreme Court was
"silent on the specific issues addressed by this case," but it
nonetheless found that the Supreme Court had addressed the use of

1  courtroom restraints generally, and those cases[2] supplied

2  principles establishing a governing standard as further

3  elucidated by the Ninth Circuit in such cases as <u>Castillo</u> and

4  <u>Gonzalez v. Pliler</u>, 341 F.3d 897, 900 (9th Cir. 2003).  (Feb. 23

5  M&O at 35-44.)  Thus, the court reaffirmed its decision finding

6  constitutional error despite the AEDPA's more restrictive

7  standard of review.

8      Now, the court considers the propriety of that decision in

9  light of <u>Deck</u>.

10                              **STANDARD**

11      Where the court's ruling has resulted in a final judgment or

12  order, a motion for reconsideration may be based either on Rule

13  59(e) (motion to alter or amend judgment) or Rule 60(b) (motion

14  for relief from judgment) of the Federal Rules of Civil

15  Procedure.  <u>See</u> <u>School Dist. No. 1J, Multnomah County v. ACandS,</u>

16  <u>Inc.</u>, 5 F.3d 1255, 1262 (9th Cir. 1993).  Because petitioner's

17  motion was filed within ten days of entry of judgment, the court

18  will consider the instant motion under Rule 59(e).  Fed. R. Civ.

19  P. 59(e) (requiring, unlike Rule 60(b), that all motions

20  /////

21

22      [2]   <u>Illinois v. Allen</u>, 397 U.S. 337, 343-44 (1970)
   (considering the trial of an unusually obstreperous criminal
   defendant, the Court held that the Constitution sometimes
23  permitted special measures, including physical restraints, even
   "shackl[ing] and gagg[ing]... as a last resort"); <u>Estelle v.</u>
24  <u>Williams</u>, 425 U.S. 501, 503-05 (1976) (finding that making a
   defendant appear in prison clothing poses such a threat to the
25  "fairness of the fact-finding process" that it must be justified
   by an "essential state policy"); and <u>Holbrook v. Flynn</u>, 475 U.S.
26  560, 568-69 (1986) (finding that deployment of additional
   security personnel during trial is not "the sort of inherently
27  prejudicial practice that, like shackling, should be permitted
   only where justified by an essential state interest specific to
28  each trial").

                                  6

1  submitted pursuant to this rule be filed within ten days of entry
2  of judgment).

3      Rule 59(e) is "an extraordinary remedy to be used sparingly
4  in the interests of finality and conservation of judicial
5  resources." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d
6  877, 890 (9th Cir. 2000).  Absent "highly unusual circumstances,"
7  reconsideration of a final judgment is appropriate only where (1)
8  the court is presented with newly-discovered evidence, (2) the
9  court committed "clear error or the initial decision was
10  manifestly unjust," or (3) there is an intervening change in the
11  controlling law.  School Dist. No. 1J, 5 F.3d at 1263.

12                              **ANALYSIS**

13      In Deck, the Supreme Court reviewed the constitutionality of
14  the use of visible shackles on a defendant in the penalty phase
15  of a capital case.  The Court concluded that the "use of visible
16  shackles during the penalty phase" was unconstitutional "*unless*
17  that use is 'justified by an essential state interest'-such as
18  the interest in courtroom security specific to the defendant on
19  trial."  Deck, No. 04-5293, 2005 WL 1200394 (May 23, 2005), at
20  *2.

21      The petitioner, Deck, was convicted and sentenced to death
22  for robbing and murdering an elderly couple.  At the trial, Deck
23  was required to wear leg braces that were not visible to the
24  jury.  On appeal, the Missouri Supreme Court affirmed Deck's
25  conviction, but reversed his death sentence.  During the retrial
26  of the penalty phase, Deck was shackled with visible leg irons,
27  handcuffs and a belly chain.  Id. at *3.  His counsel objected
28  before the jury *voir dire* began and after the jury was empaneled,

                                  7

1  but the court overruled the objection, stating that Deck "'has

2  been convicted and will remain in leg irons and a belly chain'"

3  and "his 'being shackled takes any fear out of their minds.'"

4  The penalty phase proceeded with Deck in shackles.  Deck was

5  again sentenced to death.  Id.

6       On appeal, Deck claimed his shackling violated both Missouri

7  law and the Federal Constitution.  The Missouri Supreme Court

8  affirmed the death sentence, holding that the trial court had

9  properly exercised its discretion in shackling the defendant, and

10 in any event, Deck had not demonstrated he was prejudiced by his

11 shackling.  Id.

12      The Supreme Court's analysis in Deck began with the

13 preliminary question of whether the Due Process Clause of the

14 Fifth and Fourteenth Amendments to the Constitution permitted a

15 state to use visible shackles in the *guilt* phase of a criminal

16 trial.  Id.  The Court stated that, while "[t]he law [referencing

17 the common law and Nineteenth century cases] has long forbidden

18 routine use of visible shackles during the guilt phase,"

19 requiring instead that a state shackle a criminal defendant only

20 in the presence of a "special need," its own decisions have only

21 "*suggested* that a version of this rule forms part of the Fifth

22 and Fourteenth Amendments' due process guarantee."  Id. at *3-5

23 (citing Allen, 397 U.S. at 343-44; Holbrook, 475 U.S. at 568-69;

24 Estelle, 425 U.S. at 503) (emphasis added).

25      The Court remarked that the lower courts have interpreted

26 these "statements" from Allen, Holbrook, and Estelle, as "setting

27 forth a constitutional standard" governing shackles.  Id. at *5.

28 Namely, the courts have emphasized the importance of preserving

8

1   trial court discretion, but they have applied the "limits on that

2   discretion described in [these cases]." Id.  However, the Court

3   found that, while courts were "close to a consensus that, during

4   the guilt phase of a trial, a criminal defendant has a right to

5   remain free of physical restraints that are visible to the jury,"

6   absent "essential state interests such as physical security,

7   escape prevention, or courtroom decorum." Id.  However, "[l]ower

8   courts have disagreed about the specific procedural steps a trial

9   court must take prior to shackling, about the amount and type of

10  evidence needed to justify restraints, and about what forms of

11  prejudice might warrant a new trial." Id.  The Court thus held

12  that, in light of its own precedent and of a lower court

13  consensus disapproving routine shackling, dating back to the

14  Nineteenth century, "it is clear that this Court's prior

15  statements gave voice to a principle deeply embedded in the law."

16  Id.

17          We now conclude that those statements identify a
            basic element of the 'due process of law' protected by
18          the Federal Constitution.  Thus, the Fifth and
            Fourteenth Amendments prohibit the use of physical
19          restraints visible to the jury absent a trial court
            determination, in the exercise of its discretion,
20          that they are justified by a state interest specific
            to a particular trial.

21

22  Id.  (emphasis added).  The Court then proceeded to apply this

23  same holding to the penalty phase of a criminal trial.  Id. at *8

24  (finding that "[t]he considerations that militate against the

25  routine use of visible shackles during the guilt phase of a

26  criminal trial apply with like force to penalty proceedings in

27  capital cases").

28          Respondent interprets this holding as requiring a finding

9

1   that no clearly established Federal law existed prior to <u>Deck</u>

2   regarding the use of shackles, in general, at either the guilt or

3   penalty phase.  According to respondent, the Court's opinion

4   makes clear that the Supreme Court had not previously determined

5   the constitutionality of the use of visible shackles at trial.

6   As support, respondent points to the fact that the Court

7   addressed *preliminarily* the question of the constitutionality of

8   the use of shackles during the guilt phase and referred to its

9   prior decisions as "suggesting," (rather than as "holding") that

10  visible shackles implicated constitutional concerns.

11      Respondent's interpretation is unpersuasive.  There can be

12  clearly established Federal law under a "generalized standard".

13  <u>Williams v. Taylor</u>, 529 U.S. 362, 382 (2000) (explaining that

14  under the AEDPA, "rules of law may be sufficiently clear for

15  habeas purposes even when they are expressed in terms of a

16  generalized standard rather than as a bright-line rule"); <u>Taylor</u>

17  <u>v. Withrow</u>, 288 F.3d 846, 852 (6th Cir. 2002) ("the lack of an

18  explicit statement" of a particular rule by the Supreme Court "is

19  not determinative" of clearly established law, since "[t]he Court

20  has made clear that its relevant precedents include not only

21  bright-line rules but also the legal principles and standards

22  flowing from precedent").  Even though the Court in <u>Deck</u> appears,

23  for the first time, to announce a bright-line rule that

24  unjustified, visible shackling violates the Due Process Clause of

25  the Fifth and Fourteenth Amendments, it does not follow that no

26  constitutional standard previously existed.  Indeed, this court

27  finds <u>Deck</u> holds otherwise.

28  /////

1    In recounting the common law as annunciated over the past
2    several centuries, the Court found that the law has "long
3    forbidden" the unjustified use of visible shackles during
4    criminal trials.  The Court further explained that its prior
5    precedents, <u>Allen</u>, <u>Holbrook</u>, and <u>Estelle</u>, while not considering
6    the issue directly, nonetheless supported this "basic principle."
7    <u>Deck</u>, 2005 WL 1200394, at *5.  The Court stated "it is clear that
8    this Court's prior statements gave voice to a principle deeply
9    embedded in the law ... [and] that those statements identif[ied]
10   a basic element of the 'due process of law' protected by the
11   Federal Constitution."  <u>Id.</u>

12   Moreover, the Court specifically found that a near consensus
13   existed among the lower courts that, absent an essential state
14   interest, a criminal defendant has the "constitutional" right to
15   remain free of physical restraints visible to the jury.  <u>Id.</u>
16   (noting that while "[l]ower courts have disagreed about the
17   specific procedural steps a trial court must take prior to
18   shackling," among other things, they have not "questioned the
19   basic principle" that unjustified, visible shackling of a
20   criminal defendant is unconstitutional).

21   Thus, this court finds that <u>Deck</u> did not establish in the
22   first instance the constitutional standard for imposition of
23   shackles.  Rather, it set forth a bright-line rule[3] that simply
24   /////

25

26   [3]    "Thus, the Fifth and Fourteenth Amendments prohibit the
     use of physical restraints visible to the jury absent a trial
27   court determination, in the exercise of its discretion, that they
     are justified by a state interest specific to a particular
28   trial."  <u>Id.</u>

11

1  construed prior case law, including Supreme Court authority and
2  elucidations of that authority by lower courts.

3       This conclusion, however, does not end the inquiry.  This
4  court's prior finding of constitutional error was predicated on
5  the trial court's failure to consider "less restrictive
6  alternatives to shackling."  (Feb. 23 M&O at 41.)  The pivotal
7  question remains whether this specific, procedural and
8  evidentiary requirement was clearly established Federal law at
9  the time petitioner's state court conviction became final.  In
10 Deck, the Court appears to answer this question.  When it stated
11 that "[l]ower courts have disagreed about *the specific procedural*
12 *steps* a trial court must take prior to shackling, [and] about *the*
13 *amount and type of evidence needed* to justify restraints . . . ."
14 2005 WL 1200394, at *5 (emphasis added).  The court juxtaposed
15 this finding with the "close [to] consensus" it found in the
16 lower courts regarding the general principle that the unjustified
17 imposition of visible shackles at trial violates the
18 Constitution.

19      The disagreement referenced by the Court, above, is evident
20 in reviewing the Court's lengthy string cite to cases, both
21 federal and state, which discuss procedural and evidentiary
22 requirements necessary to justify the use of shackles.  Id.  An
23 examination of those cases demonstrates that, while they do not
24 all share the same procedural and evidentiary requirements, they
25 do fall into three general categories which include both similar
26 and dissimilar requirements.

27      For example, one category of courts require, in addition to
28 a showing of a "compelling need" that the court consider less

12

1  restrictive alternatives to shackling.  See, e.g., State v.

2  Herrick, 101 P.3d 755, 757-59 (Mont. 2004) (adopting the Ninth

3  Circuit's test which requires demonstration of "compelling

4  circumstances" and consideration of less restrictive

5  alternatives); People v. Jackson, 14 Cal. App. 4th 1818, 1822-30

6  (1993) (requiring a "showing of a manifest need," and

7  consideration of less restrictive alternatives).[4]

8      A second category of courts does not require consideration

9  of lesser alternatives to shackling; instead, they require only

10 demonstration of a specific need to justify the use of shackles

11 in the particular case.  See, e.g., Harrell v. Israel, 672 F.2d

12 632, 635 (7th Cir. 1982) (per curiam) (requiring a showing of

13 "extreme need" to justify use of physical restraints on a

14 defendant at trial); Hill v. Commonwealth, 125 S.W.3d 221, 233-34

15 (Ky. 2004) (finding shackling permissible only in exceptional

16 cases where "evident danger" of escape exists or to protect

17 others from attack by the prisoner); State v. Turner, 23 P.3d

18 499, 504-05 (Wash. 2001)(en banc)(requiring shackling decisions

19 to be based on evidence that defendant poses an imminent risk of

20 escape, intends to injure someone in the courtroom, or cannot

21

22     [4]    The Court also cited Dyas v. Poole, 309 F.3d 586, 588-
23 89 (9th Cir. 2002) (per curiam); however, the Ninth Circuit did
   not consider whether shackling of the defendant in that case was
24 constitutional error.  Rather, the case addressed only the
   prejudice issue, as the state conceded the defendant's shackling
25 was constitutionally in error.  As such, in Dyas there is no
   discussion of the Ninth Circuit's test for determining whether
26 the shackling of a criminal defendant is constitutional.  This
   court assumes that the Court in Deck, meant in citing to Dyas, to
27 reference the Ninth Circuit's controlling test which is clearly
   set forth in such cases as Castillo and Gonzalez referenced
28 above.  Therefore, the court places the Ninth Circuit among the
   courts falling within this category.

13

behave in an orderly manner); <u>People v. Brown</u>, 358 N.E.2d 1362, 1363-64 (Ill. App. Ct. 1977) (finding that the "burden rests on the State to show the necessity of extreme physical security measures," such as to prevent escape, protect persons in the courtroom, and maintain order during trial); <u>Cooks v. State</u>, 844 S.W.2d 697, 722 (Tex. Crim. App. 1992) (requiring "good and sufficient reasons" to shackle a criminal defendant); <u>State v. Tweedy</u>, 594 A.2d 906, 914-15 (Conn. 1991) (allowing "reasonable means of restraint" if the court finds restraints are "reasonably necessary").

Yet still a third category imposes the additional specific requirement of notice and a hearing to determine the propriety of imposition of shackles, at which time the defendant must be given an opportunity to respond to the claimed "need" to shackle him. <u>State v. Crawford</u>, 577 P.2d 1135, 1141-46 (Idaho 1978) (finding trial court's *ex parte* decision to shackle the defendant constitutional error); <u>State v. Tolley</u>, 226 S.E.2d 353, 365-69 (N.C. 1976) (requiring a hearing where the defendant is given an opportunity to respond and at which the trial judge states reasons for shackling on the record).[5]

This body of law, cited by the Court, demonstrates that, contrary to this court's prior interpretation, the law was not clearly established as to the procedural requirements which

---

[5]   Many of the cases cited above under the "second" category also expressly discuss the requirement of a hearing, <u>See, e.g.</u>, <u>Jackson</u>, 14 Cal. App. 4th at 1825, and/or the requirement of stating the reasons for shackling "on the record" <u>See, e.g.</u>, <u>Cooks</u>, 844 S.W.2d at 722.  Other courts have expressly found a hearing unnecessary so long as the reasons for shackling are stated on the record. <u>See, e.g.</u>, <u>Tweedy</u>, 594 A.2d at 915.

consider less restrictive alternatives or the quantum or type of
evidence that justify use of shackles.  Indeed, some courts
imposed the less restrictive alternative requirement, while most
did not.

     The lack of clarity in Federal law as to the need to
consider alternatives to shackling is underscored in Deck,
itself.  Deck gives little  guidance to a trial judge on the
issue of what specific procedures or evidence should be
considered before shackling is imposed.  In fact, Deck only
requires a "trial court determination [on the record], in the
exercise of its discretion, that [shackles] are justified by a
state interest specific to a particular trial."  Deck, 2005 WL
1200394, at *5.  The question of what procedures or evidence is
left to the discretion of the trial judge subject to the above
announced standard.  Id.  The Court further noted that "[s]uch a
determination may of course take into account the factors that
courts have traditionally relied on in gauging potential security
problems and the risk of escape at trial."  Id. (emphasis add).
And certainly those factors "in a particular trial" may leave a
judge to consider less restrictive alternatives to shackling.
However, the issue before this court is whether the trial judge
is mandated by clearly established Federal law to consider less
restrictive alternatives on the record.

     According to Deck, and contrary to petitioner's argument,
"justification" does not require that less restrictive
alternatives must be considered on the record.  Deck teaches that
"justification" is satisfied when the trial judge based on the
evidence of "essential state interest, specific to a particular

15

1    trial", determines shackles are necessary.   <u>Deck</u> does not
2    mention, much less expressly impose, a further requirement of
3    considering less restrictive alternatives.   Indeed, <u>Deck</u> cites
4    many more lower court cases in which the exercise of discretion
5    does not include consideration of less restrictive alternatives.
6    Thus, following the <u>Deck</u> analysis of constitutional compliance,
7    there appears to be no clearly established Federal Law regarding
8    such a requirement and certainly no clearly established Federal
9    law at the time petitioner's state court conviction became final.
10        The trial judge in this case did not consider less
11   restrictive alternatives to shackles on the record.   However, in
12   light of <u>Deck</u>, this court finds the failure to follow that
13   procedure was not contrary to, nor an unreasonable application
14   of, clearly established Federal law.   <u>Williams v. Taylor</u>, 529
15   U.S. 362, 412 (2000) (O'Conner, J., concurring)(stating that if
16   the Federal law is not clearly established at the time of the
17   state court determination, § 2254(d)(1) bars relief).
18   Accordingly, the Court must accordingly reverse its finding of
19   constitutional error.
20        The final inquiry then is whether the state court otherwise
21   complied with the clearly established Federal law as confirmed by
22   <u>Deck</u>.   Here, as described more fully in the court's May 13 M&O at
23   34-35, after conducting an evidentiary hearing, the trial court
24   ordered petitioner restrained with a waist chain tied to a
25   security chair on the basis that "there is a likelihood of escape
26   from the courtroom" or "nonconforming conduct" based on (1)
27   petitioner's escape from jail, which was pre-planned and involved
28   the taking of a hostage with a gun (later identified as a toy),

16

1  (2) his attempted escape from jail which involved the assault
2  upon a correctional officer, (3) the nature of the crimes which
3  he was charged, and (4) his physical stature.  These findings
4  were supported by testimony from the Assistant Marshal in charge
5  of courtroom security and a criminal investigator for the
6  district attorney's office.  Id.  The court also expressly noted
7  that the proposed restraints were "unobtrusive" and that every
8  attempt would be made not to let the jury see the restraints and
9  not to otherwise call attention to them.

10      Thus, unlike the case at bar, in Deck, the record contained
11  "no formal or informal findings" by the judge, nor did he refer
12  to any risk of escape or a threat to courtroom security.  Rather,
13  the judge simply stated that Deck was shackled because he "has
14  been convicted."  Deck, 2005 WL 1200394, at *9.  While the judge
15  also noted that the shackles would "take any fear out of" the
16  jurors minds, he did not explain any reason for that fear.  Id.
17  As the Court concluded, the trial judge did not explain why
18  "shackles were necessary."  Id.

19      Here, the trial judge heard testimony from two qualified
20  witnesses, who were cross-examined by defense counsel.  As set
21  forth above, the judge found that these witnesses supported the
22  state's "need" to shackle petitioner.  Thereafter the judge made
23  a clear record of his findings, explaining the reasons why he
24  found shackles were necessary, describing the type of shackles to
25  be imposed, and the efforts which would be made to prevent the
26  jury from seeing the shackles.

27      Under these facts and based on clearly established Federal
28  law at the time, this court cannot conclude that the trial judge

1   did not properly exercise his discretion to impose shackles on

2   petitioner based upon essential state interests, specific to

3   petitioner and his trial.

**CONCLUSION**

5   For the reasons set forth below, the court DENIES

6   petitioner's motion to amend the judgment, filed February 23,

7   2005.  However, the court modifies its order of that same day to

8   the extent it reconsiders herein its prior finding of

9   constitutional error in the shackling of petitioner during the

10  guilt and penalty phases of his trial.  Under the Supreme Court's

11  decision in <u>Deck</u>, the court finds that there was no clearly

12  established Federal law requiring consideration of less

13  restrictive alternatives to shackling on the record at the time

14  petitioner's state court conviction became final.  The trial

15  judge's decision to shackle defendant at both the guilt and

16  penalty phases was compliant with clearly established Federal

17  law, and as such, was not in violation of the Due Process Clause.

18  IT IS SO ORDERED.

19  DATED: June 24, 2005

21                          /s/ Frank C. Damrell Jr.
                            FRANK C. DAMRELL, Jr.
22                          UNITED STATES DISTRICT JUDGE

18